CROSNER LEGAL, P.C.
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Kurt D. Kessler (SBN 327334)
kurt@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUMMER WHITESIDE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHOSEN FOODS, LLC,<br><br>Defendant. | Case No. **'25CV481  CAB DDL**<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

CROSNER LEGAL, P.C.

## INTRODUCTION

1.     Plaintiff Summer Whiteside ("Plaintiff") brings this action individually and on behalf of all others similarly situated, and the general public, by and through undersigned counsel, against Chosen Foods, LLC ("Defendant" or "Chosen"), and upon information and belief and investigation of counsel, alleges as follows:

*2.*     Defendant manufactures, distributes, advertises, and sells Chosen® Foods branded avocado oils.

3.     The packaging of the avocado oil prominently displays on the front and side label that their Products are "non-GMO" and/or "non-GMO Project Verified" (collectively, the "Non-GMO Claims").[1]

4.     The World Health Organization defines genetically modified organisms ("GMOs") as "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally."[2]

5.     Defendant's Non-GMO Claims are misleading because all avocado oil products are non-GMO—no GMO version of avocado oil is present on the market today. In fact, no GMO avocado oil has ever been sold. Defendant is using the Non-GMO Claims as a marketing ploy to greenwash its Products and gain an unfair advantage over its truthful competitors.

---

[1] "Products" is used throughout to mean Chosen® Foods branded avocado oil products with only avocado oil listed as an ingredient that are labeled as "Non-GMO" and/or "Non-GMO Project Verified" that are not also labeled as organic, including but not limited to Chosen® Foods 100% Pure Avocado Oil 1LT Glass Bottle, Chosen® Foods 100% Pure Avocado Oil BPA-Free PET 2LT Bottle, Chosen® Foods 100% Pure Avocado Oil 750 ML Glass Bottle, Chosen® Foods 100% Pure Avocado Oil 500ML Glass Bottle, Chosen® Foods 100% Pure Avocado Oil 250ML Glass Bottle, Chosen® Foods 100% Pure Avocado Oil BPA-Free PET 1.25L Bottle, and Chosen® Foods 100% Pure Avocado Oil Spray.

[2] Food, genetically modified, available at https://www.who.int/news-room/questions-and-answers/item/food-genetically-modified.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

6.    The California Supreme Court has recognized that this type of literally true but misleading advertising is unlawful. This is because consumer protection laws "prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)).

7.    Defendant's advertising scheme is intended to give consumers the impression that they are buying a premium product that is non-GMO, when in fact the Non-GMO Claims do not distinguish the Products in any way from other avocado oil products that do not have Non-GMO Claims.

8.    Defendant does this because consumers perceive non-GMO foods as better for them and healthier. As a result, the market for non-GMO foods has grown rapidly in recent years. Defendant is seeking to take advantage of this trend by misleading consumers into believing that its Products have a trait that other competing avocado oils do not have.

9.    By prominently featuring the Non-GMO Claims on its Products, Defendant is intending to induce consumers to pay more for its Products than it would pay for other comparable products that are not misleadingly labeled with Non-GMO Claims. A consumer reasonably believes that the presence of the Non-GMO Claims means the Products have qualities and traits associated with non-GMO foods that comparable avocado oil products without the Non-GMO Claims do not also have, when in fact all avocado oil for sale in the United States is non-GMO.

10.    Plaintiff, who purchased the Chosen 100% Pure Avocado Oil Spray 2-pack in California, was deceived by Defendant's unlawful conduct and brings this action individually and on behalf of consumers to remedy Defendant's unlawful acts.

CROSNER LEGAL, P.C.

**JURISDICTION AND VENUE**

11.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant (Defendant is a Delaware corporation with its principal place of business in California); and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs. The Products are sold at thousands of retail stores throughout the United States including Walmart,[3] and Plaintiff is seeking to represent a class of nationwide consumers. Thus, there are over 100 members in the proposed class and the proposed class has different citizenships from Defendant since hundreds of proposed class members are not citizens of California or Delaware. Plaintiff seeks disgorgement and restitution. Plaintiff also seeks attorneys' fees. Thus, this litigation exceeds the $5 million requirement under 28 U.S.C. § 1332(d). *See Montera v. Premier Nutrition Corp., No.* 16-CV-06980-RS, 2022 WL 10719057, at *3 (N.D. Cal. Oct. 18, 2022), *aff'd,* 111 F.4th 1018 (9th Cir. 2024) (noting lodestar alone after jury trial in a false and misleading labeling consumer protection action was $6,806,031.96).

12.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, supplies goods within the State of California, and has its principal place of business in San Diego, California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising,

---

[3] There are over 4,500 Walmart retail stores in the United States. *See* https://www.statista.com/statistics/269425/total-number-of-walmart-stores-in-the-united-states-by-type/#.

marketing, and sale of the Products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

13.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District as Defendant's principal place of business is in this district.

## PARTIES

14.    Defendant Chosen Foods, LLC is a Delaware corporation with a principal place of business in San Diego, California. At all times during the class period, Defendant was the manufacturer, distributor, and marketer of the Products. Defendant represents itself as 100% committed to 100% purity and maintains that its avocado oil is one of only two verified pure brands.[4]

15.    Plaintiff is a resident of California. Plaintiff purchased Chosen® Foods 100% Pure Avocado Oil Spray 2-pack during the class period in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims in purchasing the Products as set forth below.

## FACTUAL ALLEGATIONS

### "NON-GMO" IS PROMINENTLY DISPLAYED ON THE LABEL

16.    The front label for the Products prominently states that it is "Non-GMO Project Verified" thereby misleading reasonable consumers into believing

_____

[4] Purity, *available at* https://chosenfoods.com/pages/purity.

that Products are premium avocado oils that are superior to other otherwise identical products that do not have such attributes. Below are exemplar images of the front label of the Products depicting the Non-GMO statement:



CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.





CLASS ACTION COMPLAINT

17.     The ingredients list for the Products includes solely avocado oil.

**GMO AVOCADO OIL DOES NOT EXIST**

18.     GMO avocados and thus GMO avocado oil have never been sold to consumers in the United States or indeed the entire world.

19.     According to the Food and Drug Administration (the "FDA"), only eleven GMO crops exist in the United States – alfalfa, apples, canola, corn, cotton, papaya, pink pineapple, potatoes, soybeans, summer squash, and sugar beets.[5]

20.     The Agricultural Marketing Service of the United States Department of Agriculture maintains a list of Bioengineered Foods to identify the crops or food that are available in bioengineered (another word for GMO) form throughout the world—the complete list is alfalfa, apples, canola, corn, cotton, eggplant, papaya, pink pineapple, potatoes, salmon, soybean, squash, sugar beet, and sugarcane.[6] This list is codified at 7 CFR 66.6.

21.     No GMO avocados are available at all. A consumer cannot purchase a GMO avocado or avocado oil. They simply do not exist for sale.

22.     A more expansive list of all GMO products from around the world does not include avocado.[7] GMO avocados or other GMO avocado products are not available for consumers anywhere in the entire world.

23.     The Hass avocado, the most common avocado sold in the United States is not genetically modified and is the same type of avocado that Rudolph Hass discovered and patented in 1935.[8]

_____

[5]Agricultural Biotechnology, *available at* https://www.fda.gov/food/consumers/agricultural-biotechnology.

[6] List of Bioengineered Foods, *available at* https://www.ams.usda.gov/rules-regulations/be/bioengineered-foods-list.

[7] GM Crops List, *available at* https://www.isaaa.org/gmapprovaldatabase/cropslist/default.asp.

[8] Organic vs Traditionally Grown Avocados, *available at* https://loveonetoday.com/how-to/organic-vs-traditionally-grown-avocados/.

CROSNER LEGAL, P.C.

24.    So, any pure avocado oil on the market cannot be GMO now. The Non-GMO Claims on the Products are meaningless and a misleading attempt to use those claims to distinguish the Products from other avocado oil products that do not exist on the market, GMO avocado oil.

### THE NON-GMO CLAIMS ARE HIGHLY PROFITABLE

25.    Manufacturers and sellers use product packaging to convey natural and purportedly healthy material. They do so because consumers find the naturalness of a food product to be important in making purchasing decisions.

26.    According to the Natural Foods Merchandiser, a leading chronicler of the natural foods market in the United States, the natural food market, which includes non-GMO foods, grew to $215 billion in 2022 and continues to grow each year.

27.    Between 2019 and 2021, sales of foods with the Non-GMO Project seal grew 41.6%, almost twice as much as those with no non-GMO labeling. Accordingly, research found that the Non-GMO Project labeling drives purchases.

28.    In 2018, 46 percent of surveyed American consumers answered that they avoided genetically modified foods and 42 percent of those looked for the non-GMO project seal to confirm that. [9]

29.    It was estimated that the non-GMO food market was worth $947.8 million in 2018 and that the market would continue to expand, potentially reaching $1.1 billion by 2023.

30.    A study in 2015 revealed that, when directly compared item by item, GMO-free food costs an average of 33% more than a comparable food item that is not GMO-free. When compared on a per-ounce basis, GMO-free foods cost an

---

[9] Report: nearly half of consumers avoid GMOs; more are buying non-GMO products, *available at* https://non-gmoreport.com/articles/report-nearly-half-of-consumers-avoid-gmos-more-are-buying-non-gmo-products/.

CROSNER LEGAL, P.C.

average of 73% more.[10] Consumers are willing and do pay more for foods that are labeled non-GMO, believing they confer a health benefit from them compared to other products in the same category.

31.    In 2018, a consumer study revealed that there is a 10-62% price premium connected to non-genetically modified products. When compared to conventional versions of ice cream, breakfast cereal, tortilla chips, and cooking and salad oils, consumers paid a non-GMO price premium of 10 percent, 26 percent, 24 percent, and 62 percent respectively.[11]

32.    Consumers pay a premium for foods that have non-GMO claims on them, leading companies to use such claims on their products to reap the benefits of the higher price they can charge as a result.

### DEFENDANT'S MISLEADING NON-GMO CLAIMS

33.    Per the Pew Research Center, 49% of U.S. adults believe foods that contain GMO ingredients are less healthy than foods without them, and 88% of consumers have a strong preference for including this information on the label. A recent study revealed that consumers use non-GMO labels to guide their purchase decisions.[12]

34.    Knowing this, Defendant placed the Non-GMO Claims on its Products, knowing that consumers rely on such labeling when making purchase decisions.

---

[10] Goodwin, Barry K, Marra, Michele C, and Piggott, Nicholas E, *The Cost of a GMO-Free Market Basket of Food in the United States*, available at https://mospace.umsystem.edu/xmlui/bitstream/handle/10355/51946/CostGMOFreeUnitedStates.pdf?sequence=1&isAllowed=y

[11] GM Food Labels Could Burden Low-Income Consumers , *available at* https://undark.org/2018/04/19/gmo-labels-cost-low-income/.

[12] Do Consumers Care about GMO Labeling When Making Buying Decisions?, *available at* https://www.informs.org/News-Room/INFORMS-Releases/News-Releases/Do-Consumers-Care-about-GMO-Labeling-When-Making-Buying-Decisions.

CROSNER LEGAL, P.C.

35. However, there is no difference between an avocado oil product without Non-GMO Claims and one with them—no GMO avocado oil exists. Consumers are opting to choose Defendant's Products and paying a premium for the Non-GMO Claims which are misleading.

36. Numerous brands, such as Signature Select, Mantova, and Baja Precious sell avocado oil without misleading claims regarding its GMO status on the label.

37. Defendant's efforts using the Non-GMO Claims are intended to further Defendant's desire to appear healthier and better for both the consumer and the environment, thereby increasing the purchases of its Products and the prices it can charge for them, increasing its revenues.

38. In its guidance released in 2015 and updated in 2019, the FDA explicitly discussed non-GMO labeling on products that are not made using modern biotechnology as a label that would be misleading to consumers. First, the FDA reinforced that "a food is misbranded if its labeling is false or misleading in any particular." The FDA then when on to say that "[a]nother example of a statement in food labeling that may be false or misleading could be the statement "None of the ingredients in this food is genetically engineered on a food where some ingredients of the ingredients are incapable of being produced through genetic engineering." The FDA continued, saying that it "may be necessary to carefully qualify the statement where modern biotechnology is not used to produce a particular ingredient or type of food" in order for the product to not be mislabeled.[13]

---

[13] Voluntary Labeling Indicating Whether Foods Have or Have Not Been Derived from Genetically Engineered Plants: Guidance for Industry, FDA, issued November 2015, revised March 2019, *available at* https://www.fda.gov/media/120958/download?attachment.

CROSNER LEGAL, P.C.

39.    Just like the FDA contemplated when writing its guidance, Defendant's Non-GMO Claims are misleading to reasonable consumers because modern biotechnology is not used to produce anything in the Products. Defendant is misleading consumers into believing that their Products have, as a result of the Non-GMO Claims, traits associated with Non-GMO foods that comparable products without claims relating to Non-GMO do not have.

40.    Defendant did not provide any sort of qualification that the FDA advised, instead choosing to deceive consumers into believing they were purchasing a premium product, hiding the fact that consumers were instead purchasing the Products without a single ingredient which modern biotechnology is used to produce.

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S DECEPTIVE LABELING AND SUFFERED ECONOMIC INJURY**

41.    Consumers, like Plaintiff, relied on Defendant's Non-GMO Claims. The Non-GMO Claims on the labels of the Products are material to reasonable consumers. As evidenced above, there is strong consumer demand for Non-GMO foods and consumers are willing to pay more for them.

42.    Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and putative class members are entitled to restitution for the purchase price of the Products that were misleadingly labeled and advertised.

43.    Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Non-GMO Claims in fact conveyed nothing about the actual qualities of the Products.

44.    Literally true statements, like the Products, can be misleading to consumers and lead them to purchase decisions they would not have otherwise

CROSNER LEGAL, P.C.

made, like here. *Bruton v. Gerber Prods*. Co., 703 F. App'x 468, 471 (9th Cir. 2017); *Leoni v. State Bar*, 39 Cal. 3d 609, 627, 217 Cal.Rptr. 423, 704 P.2d 183 (1985) (holding that advertising, though not false, was misleading because "[a] necessary fact ha[d] been omitted."). Defendant omitted the necessary fact that avocado oil sold in the United States today cannot be GMO, and consumers like Plaintiff paid the price.

## PLAINTIFF'S PURCHASE OF THE PRODUCT

45.    Plaintiff purchased the Chosen® Foods 100% Pure Avocado Oil Spray in a 2-pack with the Non-GMO Claims at a Costco near her home in Riverside County at least once in the last six months. When purchasing the Product, Plaintiff saw and relied on the Non-GMO Claims on the label. Plaintiff would not have purchased the Product or at least would have paid less for it, had she known the Product does not have qualities associated with the Non-GMO Claims compared to comparable avocado oil products without any such claims, in contradiction to the label. Plaintiff paid approximately $23 for the Product which was a 2-pack.

46.    As a result, Plaintiff suffered injury in fact when she spent money to purchase the Products she would not have purchased, or would have paid less for, absent Defendant's misconduct.

47.    Plaintiff continues to see the Products for sale at retail stores near her home in California and on amazon.com and she desires to purchase the Products again if the Products were labeled in a non-deceptive manner. However, as a result of Defendant's ongoing misrepresentations and material omissions, Plaintiff is unable to rely on the Products' labeling when deciding in the future whether to purchase the Products. Plaintiff is not a food scientist and does not know when or if GMO avocado oil will be available for purchase.

## NO ADEQUATE REMEDY AT LAW

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

48.     Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

49.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products without Non-GMO Claims. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

50.     A primary litigation objective in this litigation is to obtain injunctive relief in the form of a label change. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to mislead consumers as to the Products with the Non-GMO Claims when the Products cannot be GMO.

51.     Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, public injunctions are available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

CROSNER LEGAL, P.C.

52.     It is also premature to determine whether there is an adequate remedy at law. No discovery has been conducted, and no expert reports have been exchanged. Defendant's internal documents may provide insight into different damages theories such as restitution in the form of the profits gained attributable to the conduct at issue.

**CLASS ACTION ALLEGATIONS**

53.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons in the United States who purchased the Products for personal use from the beginning of any applicable limitations period through the date class notice is disseminated.

54.     Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

55.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

56.     The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

57.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

58.     Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.     Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.     Whether Plaintiff and the Class are entitled to injunctive relief;

e.     Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

59.     Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

60.     Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief

CROSNER LEGAL, P.C.

appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

61.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

CROSNER LEGAL, P.C.

62.    Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate. As noted above, injunctive relief is a primary form of relief sought in this action.

63.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

64.    Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

**FIRST CLAIM FOR RELIEF**

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code § 1750, *et seq.***

65.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

66.    Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

67.    At all times relevant hereto, Plaintiff and the members of the Class are "consumer[s]," as defined in California Civil Code section 1761(d).

68.    At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

69.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

70. The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

71. Defendant disseminated, or caused to be disseminated, through its advertising, misleading representations, including the Non-GMO Claims. These are material misrepresentations and omissions as reasonable consumer would find the fact that the Products are no different to comparable avocado oils without any Non-GMO claims to be important in their decision in purchasing the Products.

72. Defendant's representations violate the CLRA in the following ways:

a) Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b) Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c) Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

73. Defendant violated the CLRA because the Products were prominently advertised with the Non-GMO Claims but, in reality, it is no different from an otherwise identical avocado oil product without any Non-GMO claims. Defendant knew or should have known that consumers would want to know its Products do not have the qualities associated with Non-GMO products when compared to comparable avocado oils without any such claims.

74. Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

75. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

76. Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein. Plaintiff seeks all attorneys' fees and costs available under the CLRA.

77. Pursuant to California Civil Code section 1782, Plaintiff will notify Defendant in writing by certified mail of the alleged violations of the CLRA and will demand that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiff will amend the complaint to seek damages under the CLRA.

78. Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

## SECOND CLAIM FOR RELIEF

## Violation of California's Unfair Competition Law

## Cal. Bus. & Prof. Code § 17200, *et seq.*

79. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

80. Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

81.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

82.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

83.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein.

84.    There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the comparable avocado oil products cannot be GMO) of which it had knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

85.     Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products have qualities that other comparable avocado oils that do not have non-GMO claims do not have, when they in fact do not as all avocado oil is non-GMO.

86.     Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

87.     Defendant's wrongful business practices and violations of the UCL are ongoing.

88.     Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

89.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.       Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.       Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.       Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.       Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

e.       Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

f.       Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: February 28, 2025              CROSNER LEGAL, P.C.


By:              */s/ Craig W. Straub*
                    CRAIG STRAUB

Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Kurt D. Kessler (SBN 327334)
kurt@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301

23

Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff

**Affidavit Pursuant to Civil Code Section 1780(d)**

I, Craig W. Straub, declare as follows: I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.  This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.  Defendant has done, and is doing, business in California, including in this county. Such business includes the marketing, promotion, distribution, and sale of the Products within the State of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed February 28, 2025 at San Diego, California.

CROSNER LEGAL, P.C.


By:    */s/ Craig W. Straub*
        CRAIG W. STRAUB

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
craig@crosnerlegal.com

CLASS ACTION COMPLAINT