UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUMMER WHITESIDE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHOSEN FOODS, LLC,<br><br>Defendant. | Case No.: 3:25-cv-00481-CAB-DDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>[Doc. No. 8] |

This matter comes before the Court on Defendant Chosen Foods, LLC's ("Defendant") motion to dismiss. [Doc. No. 8.] The motion has been fully briefed, and the Court finds it suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** the motion.

I.  ALLEGATIONS IN THE COMPLAINT

A. Parties

Defendant manufactures, distributes, advertises, and sells Chosen® Foods branded avocado oils. [Complaint ("Compl.") ¶ 1.] Plaintiff Summer Whiteside ("Plaintiff") is a California citizen who purchased the Chosen 100% Pure Avocado Oil Spray 2-pack in

California. [*Id.* ¶¶ 10, 15.] Plaintiff purports to represent a class of nationwide consumers of Defendant's avocado oil products ("Products"). [*Id.* ¶¶ 1, 11.]

### B. Plaintiff's Class Allegations

The crux of Plaintiff's lawsuit is that Defendants mislead consumers by using a non-GMO label on their Products, because all avocado products are free from GMOs. [*See* Compl. ¶¶ 3, 5.] Plaintiff alleges that the packaging of Products prominently displays on the front and side label claims that the Products are "non-GMO" and/or "non-GMO Project Verified" (collectively, the "Non-GMO Claims"). [Compl. ¶ 3.]

The World Health Organization defines genetically modified organisms ("GMOs") as "organisms (i.e. plants, animals or microorganisms) in which the genetic material (DNA) has been altered in a way that does not occur naturally by mating and/or natural recombination." [Compl. ¶ 4]; *See Food, genetically modified*, World Health Organization (August 8, 2025), https://www.who.int/news-room/questions-and-answers/item/food-genetically-modified. Both parties agree that GMO avocados have never been sold to consumers anywhere in the world. [Compl. ¶ 18; Doc. No. 8-1 at 12.]

Plaintiff alleges that the Non-GMO claims on the Products are meaningless and a misleading attempt to use those claims to distinguish the Products from other avocado oil products that do not exist on the market. [*Id.* ¶ 24.] In her complaint, Plaintiff states that she saw and relied on the Non-GMO Claims on the label of the avocado oil. [*Id.* ¶ 45.]

Next, Plaintiff alleges that by using the non-GMO label, Defendant intentionally misleads consumers into paying Defendant a premium for the Products. [Compl. ¶ 35, 37.] Plaintiff alleges that she would not have purchased the Product, or at least would have paid less for it, had she known the Product did not have qualities associated with the Non-GMO Claims compared to similar avocado oil products without any such claims, in contradiction to the label. [*Id.* ¶ 45.]

Finally, Plaintiff alleges that reasonable consumers relied on Defendant's non-GMO claims when making purchasing decisions and suffered economic injury because of Defendant's actions. [*Id.* ¶¶ 41–42.]

On February 28, 2025, Plaintiff, on behalf of herself and all others similarly situated, filed a class action complaint against Defendant based on the above-described practices. [*Id.*] The complaint asserts two causes of action: Violation of California's Consumers Legal Remedies Act Cal. Civ. Code § 1750, *et seq*. ("CLRA") and Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"). The Court addresses these claims in relation to Defendant's motion to dismiss.

## II. LEGAL STANDARD

### a. Motion to Dismiss under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff has the burden of establishing that the court has subject matter jurisdiction over an action. *Ass'n of Am. Med. Coll. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000). In a class action at least one of the named plaintiffs must meet the Article III standing requirements. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Article III requires that: (1) at least one named plaintiff suffered an injury in fact, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citations omitted).

### b. Motion to Dismiss under Rule 12(b)(6)

At the pleading stage, the Court looks to whether Plaintiff has plausibly stated a claim: an exercise that draws on judicial experience and common sense. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire*

*& Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted). If a complaint does not survive scrutiny under Rule 12(b)(6), the Court will grant leave to amend unless it determines that no modified claims "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

### c. Request for Judicial Notice

Plaintiff included images of the Product's front (but not side) labels in her complaint. Plaintiff later filed a request for judicial notice which includes images of the Product's side labels (Exhibit A) and articles about GMO foods (Exhibits B—F). [Doc. Nos. 10-1 to 10-6.]

Generally, review of a complaint under Rule 12(b)(6) is limited to the pleading, and the Court may not consider extra-pleading materials without converting the motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); 12(d). There are two exceptions to this general rule: the Court may consider materials that are judicially noticeable under Federal Rule of Evidence 201, and the Court may consider materials that fall within the incorporation-by-reference doctrine. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Federal Rule of Evidence 201 permits judicial notice of "a fact that is not subject to reasonable dispute" because it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court may take notice of "undisputed matters of public record," but not of "disputed facts stated in

public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original).

### III. DISCUSSION

#### a. Request for Judicial Notice

Product labels are commonly judicially noticed in consumer protection advertising actions. *See, e.g., Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) (taking judicial notice of packaging labels that the complaint quoted). Here, the Products' side labels are incorporated by reference in the pleadings. [Compl. ¶ 3.] Also, the Court may take notice of these labels under Fed. R. Evid. 201 as the labels referenced in the complaint are not subject to reasonable dispute. Resultingly, the Court takes judicial notice of the side labels found in Exhibit A.

"A court may not take judicial notice of the truth of disputed factual matters at the pleading stage." *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1320–21 (C.D. Cal. 2023). A court may take judicial notice of the existence of news articles for the purpose of determining what statements they contain. *See Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991). The Court takes judicial notice of the articles in Exhibits B through F. [Doc. Nos. 10-2 through 10-6.]

Regarding Exhibits B through F, Plaintiff seeks judicial notice not of the fact of the articles themselves, but rather, of the truth of the contents therein. Plaintiff introduces the sources by stating that she has "compiled several sources that raise serious concerns about the Non-GMO Project's labeling practices" and argues that the articles demonstrate that the Non-GMO statements would deceive consumers. [Doc. No. 9 at 9-11.] The articles in Exhibits B through F discuss Non-GMO labelling practices. [*See* Doc. Nos. 10-2 through 10-6.] Courts, however, "do not take judicial notice of newspaper articles for the truth of the contents of the articles." *Ali v. Intel Corp.*, No. 18-CV-03981-LHK, 2018 WL 5734673 at *3 (N.D. Cal. Oct. 31, 2018). "This is because often, the accuracy of information in newspaper articles . . . cannot be readily determined and/or can be reasonably questioned."

*Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1028 (C.D. Cal. 2015). Therefore, the Court declines to take notice of Exhibits B through F for their truth.

### b. Motions to Dismiss under Rule 12(b)(1)

Defendant moves to dismiss Plaintiff's complaint in its entirety for lack of Article III standing. Standing is a threshold issue that the Court must reach before addressing the merits or any other substantive matter. *See Stoianoff v. State of Mont.*, 695 F.2d 1214, 1223-24 (9th Cir. 1983). Where plaintiffs in a false-advertising case "'contend that [they] paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013). A plaintiff must "allege facts that would permit a factfinder to determine, without relying on mere conjecture, that the plaintiff failed to receive the economic benefit of her bargain." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 280, 281 (3d Cir. 2018).

Plaintiff pleads that she would not have purchased, or would have paid less for, the Products absent Defendant's alleged misconduct. [Compl. ¶ 43]. This is sufficient to confer Article III standing. *Hinojos*, 718 F.3d at 1104; *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 330 (2011). "To establish standing to bring a claim under these statutes [UCL and CLRA], plaintiffs must meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III of the U.S. Constitution." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). For the foregoing reasons, Plaintiff has sufficiently pled the Article III standing requirements, and the Court DENIES Defendant's motion to dismiss based on lack of Article III standing.

### c. Motion to Dismiss under Rule 12(b)(6)

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. and Prof. Code § 17200. The CLRA prohibits a number of unfair methods of competition and unfair or deceptive acts or practices. Cal. Civ. Code § 1750 *et seq*. The California Supreme Court has recognized "that these laws prohibit 'not only advertising

which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), (quoting *Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985)).

Appellants' claims under these California statutes are governed by the "reasonable consumer" test. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." (citation omitted)); *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 506–07 (Cal.App.2003) ("[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer."). Under the reasonable consumer standard, Plaintiff must "show that 'members of the public are likely to be deceived.'" *Freeman*, 68 F.3d at 289 (quoting *Bank of W. v. Superior Ct.*, 2 Cal.4th 1254, 1267 (1992)). "[A]llegations of deception must be assessed according to what the advertisement or label depicts and actually says, and not allegations of implied meaning." *Andrade-Heymsfield v. Danone US, Inc.*, 2019 WL 3817948, 1, 7 (S.D. Cal. Aug. 14, 2019).

### i. Review of the Front Label

As directed by the Ninth Circuit, the Court begins its analysis with the front label, as reasonable consumers are not expected to look beyond unambiguously misleading representations on the front label to determine the truth from the rest of the packaging. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778–82 (9th Cir. 2024).

Defendant first argues that Plaintiff's complaint should be dismissed because the Non-GMO Project certification logo on the front label of the Products is not false or misleading to the reasonable consumer. [Doc. No. 8-1 at 14.] Defendant argues that Plaintiff has an unreasonable interpretation of the Product's label for two reasons. First, the "Non-GMO Project Verified" certification logo cannot be false because the Products are actually certified by the Non-GMO Project, therefore, the "Non-GMO Project Verified" logo cannot reasonably deceive consumers. [Doc. No. 8-1 at 10.] Second, the "Non-GMO

Project Verified" certification logo does not plausibly represent to consumers anything other than that a product meets the standards of the Non-GMO Project, and Defendant is entitled to bear its certifying mark. [Doc. No. 8-1 at 11.]

"California's UCL, [False Advertising Law], and CLRA require basic fairness in advertising and permit a civil remedy against those who deceive consumers." *Whiteside*, 108 F.4th at 777. The reasonable consumer standard "requires more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal quotations and citations omitted). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotations and citations omitted). "Stated another way, a complaint asserting a violation of these laws must allege that the packaging will deceive many consumers, not just that a few might be deceived." *Whiteside*, 108 F.4th at 778.

"Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss." *Fitzhenry-Russell v. Coca-Cola*, No. 5:17-CV-00603-EJD, 2017 WL 4680073, *3 (N.D. Cal. Oct. 18, 2017) (citation omitted). "However, the court may determine, as a matter of law, that the alleged violations of the CLRA, UCL, and [False Advertising Law] are simply not plausible." *Garza*, 760 F.Supp.3d at 1047 (citing *Chong v. Nestle Water N. Am., Inc.*, No. 20-56373, 2021 WL 4938128, at *1 (9th Cir. 2021)) ("[T]his Court may conclude on the pleadings that no reasonable consumer would be misled by any of the product labels at issue in this suit.").

Regarding the front label, the Court agrees with Defendant. If the well-pleaded facts do not permit the Court "to infer more than the mere possibility of misconduct," the complaint fails to show "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. No reasonable consumer would be misled into spending more on the Products than they would have spent on other avocado oil products because of the Non-GMO Project label.

Both parties agree that the Products are verified by the Non-GMO Project. [Doc. No. 8-1 at 7; Doc. No. 9 at 7.] *Myers v. Starbucks Corporation* instructs the Court's review of the front label. *Myers v. Starbucks Corp.*, No. 22-55930, 2024 WL 3102800 (9th Cir. June 24, 2024). In *Meyers*, the plaintiff also brought a suit under the CLRA and UCL. *See id*. The plaintiff alleged that Mars's Dove Dark Chocolate products that bore the Rainforest Alliance Certified™ logo falsely led her to believe that the chocolate products were made without employing child slave labor or contributing to rainforest deforestation. *Id.* at 1. The Ninth Circuit upheld the district court's dismissal of the claim, as the chocolate label did not represent that Rainforest Alliance Certified™ farms avoid deforestation and the use of child labor, nor did the plaintiff allege the label did so. *Id.* "A significant portion of reasonable chocolate consumers thus would not be led to believe that Dove Dark Chocolate contained cocoa beans produced without child labor and deforestation." *Myers*, No. 22-55930, 2024 WL 3102800, at 1 (internal quotations omitted).

As a matter of law, the reasonable consumer and purchaser of the Products would understand that the Non-GMO Project Verified label means that the Products are certified by the Non-GMO Project. Plaintiff has alleged nothing more regarding the front label. A significant portion of reasonable avocado oil consumers would not be led to believe that the Products did not contain GMO's while other avocado oils did. The Court does not find that the front label deceives the reasonable consumer.

### ii. Review of the Side Label

Considering that the Product's front label does not plausibly deceive the reasonable consumer, the Court next considers the package as a whole. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023). Customers who want to know more about the non-GMO status of the product "would necessarily require more information before reasonably concluding that the label is making a particular representation." *Whiteside*, 108 F.4th at 781.

In her compliant, Plaintiff alleges that Defendants label "their Products as "non-GMO" and/or "non-GMO Project Verified" (collectively, the "Non-GMO Claims")".

[Compl. ¶ 3.] Plaintiff alleges she relied on Defendant's Non-GMO Claims. [Compl. ¶ 41.] The Court notes that Plaintiff's allegations are sufficient to state that Plaintiff referenced claims that the Products are non-GMO on the side label as part of her decision to purchase the Products, and for reasons described above, the Court takes judicial notice of the photos of the side labels included in Plaintiff's request for judicial notice. [Doc. No. 10-1 at 2—6.]

The Court turns next to the reasonableness of the Product's non-GMO claims. Plaintiff argues that, when considered together, the Non-GMO Project Verified logo and the side-panel language suggest that Chosen Foods 100% Avocado Oil is non-GMO while other avocado oil products are not. Plaintiff asks the Court to hold Defendants accountable for misleading the reasonable consumer into believing other avocado oils are GMO and tricking consumers into paying a premium for the Products. Defendant claims that a reasonable consumer who cares about the GMO status of ingredients knows that there are no commercially available genetically engineered avocados, and if consumers had any questions about the Non-GMO Project's certification standards, they would review those standards. [Doc. No. 8-1 at 11.]

Again, the Court agrees with Defendant. Defendant's Products do not suggest other avocado oils contain GMO's. Plaintiff's imaginative interpretation of the label cannot support a valid consumer deception claim. Plaintiff's argument is an allegation of implied meaning and does not apply to the reasonable consumer. *See Andrade-Heymsfield*, 2019 WL 3817948, at 7.

*Trader Joe's v. Moore* guides the Court's analysis. In *Trader Joe's*, the Ninth Circuit rejected the plaintiff's argument that honey labeled "100% New Zealand Manuka Honey" was misleading, even though the product consisted of "only between 57.3% and 62.6% honey derived from Manuka flower nectar." 4 F.4th at 876. The Circuit held that the plaintiff's belief that the honey was derived entirely from one floral source was implausible. *See id.* at 882, 884. *Trader Joe's* noted that the "information available to a

consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging." *Id*. at 882.

*Trader Joe's* reached three critical conclusions. First, "given the foraging nature of bees, a reasonable honey consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source." *Id.* at 883. Second, "the inexpensive cost" of the honey "would signal to a reasonable consumer that the product has a relatively lower concentration of honey derived from Manuka flower nectar," as Trader Joe's Manuka Honey costs about 5% of the market rate for "92% honey derived from Manuka flower nectar." *Id.* at 884. Third, the label's "10+" rating on the Unique Manuka Factor ("UMF") scale—a metric for the purity of honey which ranges from "5+ to 26+"—conveys to the reasonable honey consumer that the honey fell "decidedly on the lower end of the 'purity' scale," even though the scale itself was found nowhere on the label or other advertising. *Id.* at 883–85. Ultimately, reasonable consumers should have a basic understanding of how the food that they choose to purchase is produced.

Applying *Trader Joe's*, as a matter of law, the reasonable consumer of the Products would understand that only certain foods are available in both non-GMO and GMO forms, that certain ingredients—including avocado oil—are only available in a non-GMO form, and that avocado oil is a non-GMO alternative to canola or vegetable oils. Given this context, a reasonable consumer would not interpret the Products' label to represent anything about whether other avocado oil products contain GMOs or the GMO-free status of commercially available avocados. Instead, a reasonable consumer would believe that they are purchasing avocado oil that has been certified by the Non-GMO Project, which is exactly what a reasonable consumer received.

When viewed in this precedential context, Plaintiff fails to point to any of the Products' statements that make assertions about the GMO status of other avocado oil products. After considering Defendant's GMO statements on the side label, Plaintiff has failed to plausibly state a claim that Defendant has misled the reasonable consumer. The Court therefore dismisses Plaintiff's claim.

### C. Standing for Injunctive Relief

Defendants moved to dismiss Plaintiff's complaint for lack of standing. As the Court found that the complaint fails to plausibly allege consumer deception, the Court need not reach the issue of injunctive relief.

### IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's complaint. Because Plaintiff could not possibly amend her complaint to state a plausible claim, the case is **DISMISSED WITH PREJUDICE**.

It is **SO ORDERED**.

Dated:  August 26, 2025

Hon. Cathy Ann Bencivengo
United States District Judge